Thank you very much, Your Honor. May it please the Court, my name is David Schlesinger. I represent the petitioner Francisco Javier Reyes-Corado. In his declaration supporting his motion to reopen, which is the subject of this petition for review, which appears at AR 57 to AR 62, Mr. Reyes-Corado set forth a lengthy pattern of persecutory acts, by my count more than 15, that have occurred since his asylum hearing concluded on November 1, 2006. Going by category, those persecutory acts include monitoring of phone calls, stalking, verbal and one directed specifically at Mr. Reyes-Corado himself. May I ask a question about the death threats? Certainly, Your Honor. Is it possible to tell from the record how many separate threats there were, because there are a number of different people who are describing them? By my count, Your Honor, and I have a charge here simply because there's so much activity in this case, there were at least three death threats. The most prominent one that I just alluded to was the note that was sent to his family in 2017, appearing in a photo which appears at AR 74, and that states, we already killed the first one, comma, Paco is next. Paco referring to Mr. Reyes-Corado, that's his nickname in Guatemala. And that one is particularly significant, Your Honor. It shows the central, at least one central reason why Mr. Reyes-Corado's branch of his family, I'll call it the Noe Reyes branch of his family, is being targeted. Could I ask you, other than that one, which ones are directed at Mr. Reyes-Corado? There was not one directly, other than that, directly directed specifically at Mr. Reyes-Corado since his original asylum hearing. Prior to that original asylum hearing, as described in the IJ's oral decision, there was a death threat directed to him back then. But continuously, Your Honor, indirectly, the death threats directed at his family members have at least indirectly alluded to Mr. Reyes-Corado himself. Is that the December 2016, you're going to die dogs, that was a note left at the family? That's correct, Your Honor. That's one of the entire, I guess you can call it an entire family death threat that was directed. There were also a variety of gunshots fired at the family home. I have, at my list, I know that there were at least two fired at the family homestead. And there were two other occasions in which gunshots were fired in the vicinity of the family homestead. Where's the third threat? I just want to make a clean record. So where's the third one? I'm also looking at a Valentine's Day threat in 2009, February 14, 2009, which was directed at his mother and sister. And one on January 10, 2013, which was directed at his sister's two children and implicitly at his sister himself, because the son of Simone mentioned then that she lived in a very nice house. It would be a shame, essentially, if there were no one left to live in there. So this is a, when you look at the totality of the circumstances, this is a situation in which an entire branch of a family has been systematically and violently terrorized for, essentially, since, since Noe Reyes' death in 2003, it's going on 20 years. And I can represent to the panel, even though it's not in the record, that having spoken with Mr. Reyes Corrales two days ago, if this case were to eventually go back to Immigration Court for a new hearing, we would be able to proffer evidence that in the last six years since his declaration was filed, that there is still a continuing pattern of threats being directed at his family in Guatemala. Where is Mr. Reyes Corrales now? Mr. Reyes Corrales is currently residing in San Diego County, Your Honor. He's not in detention? No, he's not, Your Honor. And now I should note, since you've mentioned that, because I have a duty of updating the panel regarding recent events, and I don't represent Mr. Reyes Corrales in all of his different immigration proceedings and his request for relief. But I should note, so the panel is aware of it, and I just learned about this two days ago, that Mr. Reyes Corrales also has a pending parole-in-place application before DHS predicated on his being the father of an active-duty sailor, his oldest daughter. What application? What did you say he has pending? It's called a parole-in-place application, Your Honor. And I have no idea how long it's going to take to adjudicate. But at least theoretically, given what at least one of my colleagues in my firm has told me, it gives him a theoretical pathway to adjust status. Again, I have no idea of how long it's going to take for that to be adjudicated by DHS. I simply want to apprise the court so it's aware of it. And this is because his daughter is in the military? Yes, his oldest daughter, Your Honor, is an active-duty sailor in the U.S. Navy. She just turned 21 years old. Can I ask you to respond to what I expect the government will argue in that the changed circumstances requirement is not met because the incidents, while terrible, are not different in kind to what was before the immigration judge? And in fact, murder of the father was before the immigration judge. And so I suspect they'll argue what was before the immigration judge was more serious. The Ninth Circuit affirmed previously the denial of relief. And so tell us how a difference either in frequency or length of time, how that should meet the requirement and what's the best authority for that? Sure. Two points, Your Honor. First, referring to the court's earlier memorandum disposition, it did not address anything other than the supposed lack of inability and willingness of the Guatemalan government to essentially conduct law enforcement activities directed toward the Simón branch of the Reyes family. Second, I would point, Your Honor, to the extensive discussion in our opening brief of Malti V. Ashcroft, which I think is a controlling case here. Malti specifically held that even if an applicant is, a movement is proceeding on the same theory of relief that he sought in his original I-589 asylum application, if the new evidence submitted were both quantitatively and qualitatively different from what was originally presented, then that is adequate grounds for reopening. And I think we have that here, Your Honor. You have the, as we just discussed during our colloquy, the extensive number of persecutory activities that occurred in Mr. Reyes Corraldo's native town of Salinas since November of 2006, and you also have qualitatively different evidence in that you can see the entire scope of the targeting of that branch of the family. It's not just Mr. Reyes Corraldo, it's virtually the entire family, his sisters, his mother, his brother-in-law was nearly poisoned. So, alluding earlier to our colloquy, Your Honor, about death threats, someone in his family, his brother-in-law, Rildo, was virtually murdered. He was hospitalized for three days because he ate a poisoned banana plant, poison had been planted by one of Simone's sons. So, I see that my time is running short and I would like to try to reserve some time for rebuttal, but- We'll give you two minutes. We'll give you two minutes for rebuttal. Certainly, Your Honor. If there are no further questions, I'd like to reserve. Good morning, Your Honors. May it please the Court. Anita Natun on behalf of the Attorney General. Your Honors, this Court should dismiss the petition for review. As Judge Koh mentioned, the record does not show that there's been a change in Mr. Reyes Corraldo's changed circumstances based on the exception to the motion to reopen regulations. As Judge Koh mentioned, when he was before the immigration judge previously, not only was there evidence of Mr. Reyes Corraldo's father's death, there was the death of a second cousin. There was evidence that property had been taken from the family. There was proof, there was record evidence that Mr. Reyes Corraldo's mother had been threatened at gunpoint by someone, a relative with a machete in his hand. There is evidence in the record of the house being shot at, and this is all prior to Mr. Reyes Corraldo's motion to reopen. Ms. Otunla, in the Bains v. Holder case, in which this Court held that there were changed country circumstances in India, as I read it, the evidence that supported that finding was a single incident in which the petitioner's friend was beaten up and multiple telephonic threats to the petitioner's life. And Judge Koh went through with your opponent a laundry list of parades of horribles that have been going on for 15 years in Guatemala since the original BIA hearing. And I'm just wondering how you can distinguish this case from the Bains case, or the Bains case from this case. I apologize, Your Honor, I'm not familiar with the factual circumstances in the Bains case. But just based on your question, I would again reiterate that, if I may attempt to distinguish it, before the motion to reopen, there was evidence of death, there was evidence of telephonic threats, there was evidence of telephonic threats against Mr. Reyes Corraldo himself on multiple occasions, as well as his family, and there was land that was taken, and the petitioner's family received threats. They were, I believe, some of the language in the record is that they received these phone calls, telephonic threats, where they were constantly terrorized by relatives. And so I would argue that, even though after Mr., or in the record, when Mr. Reyes filed his motion to reopen, even though the death threats, there were death threats, they were similar in terms of substance, and maybe in terms, it's not clear prior, when he was initially, before the motion to reopen, it's not clear necessarily how many instances, the number. Like the declarations say that there were threats, but they don't specify the number of threats. Or they say, you know, petitioner's house was riddled with bullets. So there were deaths of family members, and even though, in his motion to reopen, there haven't been any deaths, even though the family, the evidence shows that the family has continued to be harassed and targeted. Why isn't there a pattern of threats here, extending a far longer period of time than what was before the immigration judge, and the motivation is different? At the time of the first hearing, they thought the motivation was some type of retaliation. But here, it's obvious that the uncle's family is targeting this family, even members who have no ability or unlikely to retaliate for the murder of Noe. So why can't all of these quantitative additional incidents constitute a qualitative difference? Well, Your Honor, I disrespectfully, I would respectfully agree, or disagree rather, that the motive is different here. The immigration judge and the agency found that the motive was based on retaliation, and the record shows that the family continues to retaliate based on this same family feud. But I think the retaliation that the IJ considered was whether Mr. Reyes-Corrado would then want to kill someone from the uncle's family for revenge, for the murder of his own father. And here, they're threatening children, they're threatening the mother, who's an elderly woman, not at all people who are likely to retaliate or seek revenge. So that motive is no longer, I mean, it may be a reason, but it's not the complete reason, right? Well, if I may again point to the record, the threats against the mother or the sister or their children was present and prevalent in the initial hearing before the immigration judge. And that is in the record at page 59, in the record at page 406, in terms of the house being riddled with bullets, petitioner's mother being called and threatened her life. It's in the record, petitioner's mother said, I received threatening calls that if my husband's body was shot so many times, my son's body, so because a person was putting a gun to my head and threatening me in that same place, and my husband was killed. So not just threatening Mr. Reyes-Corrado, but threatening his mother, and that's in the record at page 105. The gunshots to the family house, that would be targeting other relatives, not just Mr. Reyes-Corrado. Because there were other people at home and other people who lived there, Mr. Reyes-Corrado was not in the country and in his village or at his home at that time. The land being taken from the family, that would be targeting Mr. Reyes-Corrado's family and not necessarily Mr. Reyes-Corrado. And so I would argue, I would push back on that, Your Honor, and say that there were threats initially before the IJ to his mother, to his sister, to other family members, as well as Mr. Reyes-Corrado. And his motion to reopen, it's showing a similar pattern of threats against the family. And there were deaths before Mr. Reyes-Corrado when he initially appeared before the immigration judge. And the relatives have continued to harass his family, but there haven't been any deaths. And again, I would say that there's a lack of nexus, because the case really does that bottom point to. But if his particular social group is his family, then why is there no nexus with the inter-family dispute? Why is that? So, Your Honor, I would point out that in the agency decision at page 2, although there was a, I would say there hasn't really necessarily been a finding about the particular social group being relevant here. And that's because of the agency citation to matter of LEA, which has been vacated. And so I would say based on that, that portion of the decision in terms of the family being a PSG can no longer be relied on. And so it would be, there's still other dispositive findings as to his eligibility for asylum, such as past persecution, the nexus finding, the unable and unwilling, which I think counsel had said the court didn't rely on. But as far as I believe in the prior docket, which is docket A. But you would just agree that if someone's, you agree that a family can be a particular social group, right? That can be a cognizable group, right? So if the family is your social group, then why couldn't an intra-family dispute provide, you know, nexus to your protected ground, which is your family group? So I would say that hypothetically or generally, Your Honor, yes, family could be a particular social group. And an intra-family dispute might be if based on the record evidence, there's circumstantial or direct evidence showing that family was targeted or the motivations were based specifically on the family, the Reyes family. And that was the particular social group that was conveyed before the agency, before the Reyes family. Now, in his motion to reopen and in the opening brief, there seems to be a little bit, I think, of trying to like parse, where now they're trying to make the particular social group slightly more narrow, referring to the immediate family of Noir Reyes, which was not the particular social group that was actually articulated before the agency. But in this case, Your Honor, I would say that based on this record evidence, where there's not a showing of a family being the motive, the agency found there was no political opinion and it wasn't based on the family. That at bottom, it was a family feud and a fear of retaliation based on this family feud that had gone back 20, 30 years. I'm sorry, we're about to run out of time, so I apologize for interrupting you. But let me ask you one last question and then I want to see if my colleagues have any questions. On the last issue about whether he had to attach a new application, there is a vacated Ninth Circuit decision, Etemadi v. Garland, that said, well, you're seeking the same relief that you previously sought. You don't have to attach a new application. Should we make that holding here? It's a different rule if you're seeking something that you previously did not seek. Yes, Your Honor, if I may answer that with two answers. Etemadi, as you pointed out, was vacated. But I will direct the court to another decision, a published decision, which is still good law, Aliyev v. Barr. And based on that, I would concede that if and where an application or an applicant is seeking to reopen proceedings based on the same basis for which they had previously filed an application, then yes, the requirement under the regulations for them to resubmit an application for relief would not be good law based on Aliyev v. Barr. And the citation for that is 970. You would not have any problems with us basically following the same reasoning as Etemadi then? Sounds like that would be good. Just on that, yes, Your Honor. Just as to the agency's finding that there was a requirement for Mr. Reyes-Corrado to resubmit an application. But as to the other findings, I would still argue there was no abuse of discretion. And so the petition for review should be denied because he failed to show that there were materially changed country conditions in his motion to reopen. Could I just ask for that citation, please? Yes, Your Honor. 971 F. 3rd, 1085. And it's a 2020 petition published. Thank you very much. Judge McMahon, do you have any additional questions? No, actually, you just asked mine. I think you covered it. Okay, thank you. Let's go to two minutes then with Mr. Schlesinger, please. Thank you, Your Honor. I have a few points I'd like to briefly address. First is that respectfully, my opponent did slightly misstate the record the property seizure that occurred. It did occur in 2004, but as Mr. Reyes-Corrado noted in his declaration, he did not learn about that incident until 2017 because his family concealed it from him. So it actually is within the basket of new persecutory activities  Second, my opponent also mentioned previous conclusions by the BIA regarding past persecution and inability and unwillingness. As I discussed earlier, inability and unwillingness is not the subject of this proceeding because the BIA did not discuss it in its order, its most recent 2018 order. And it also didn't discuss past persecution, its most recent 2018 order. And indeed, we're not proceeding on that theory. We're proceeding exclusively on a well-founded fear of future persecution theory, which is a bar that is easily exceeded here, given that a movement only is to show that it's at least 10% likely that he would be persecuted if returned to his home country. One additional point I'd like to make, Your Honors, is that the BIA's order in terms of its nexus discussion does not discuss the correct legal standard for mixed motive persecutions. For example, it talks about on page AR4, central motivation for the harm, which has never been the standard that this Court has applied in that context. And I would refer the Court to Paros Simova v. Mukasey, which we've discussed extensively in our opening brief. The central reason for persecution need not be 51% or more of the persecutory animus motivating the persecuting animus, nor does it even have to be the predominant one. I see that my time has expired. If there are no further questions, I'd be pleased to submit. Judge McMahon, do you have any questions? No, I'm fine. Thank you. Judge Wardlaw? No, thank you. Thank you very much to counsel on both sides. This case is submitted.
judges: WARDLAW, KOH, UNKNOWN